STATE of Wisconsin, Plaintiff-Respondent,

v.

Marie A. EZELL, Defendant-Appellant.†

Court of Appeals

*No. 2013AP2178–CR. Submitted on briefs August 13, 2014.
—Decided September 17, 2014.*

2014 WI App 101

(Also reported in 855 N.W.2d 453.)

† Petition for review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tristan S. Breedlove*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. Marie Ezell appeals from convictions arising out of her attempt to deliver contraband to a prisoner. Prison correctional officers who were informed that Ezell was carrying contraband questioned her at the prison without *Miranda*[1] warnings. Ezell made damaging admissions and was subsequently arrested and searched. The search turned up contraband. Ezell appeals from the circuit court's denial of her motion to suppress the evidence on grounds that the questioning violated her *Miranda* rights. We reject the circuit court's conclusion that Ezell was not in custody when she was questioned at the prison, but we affirm the denial of the motion to suppress the physical evidence. The *Miranda* violation here was neither intentional nor actually coercive, so suppression of the physical evidence is not warranted. Ezell's conviction is affirmed.

*Facts*

¶ 2. While monitoring prisoner phone calls, prison staff overheard a conversation in which they believed Ezell was using coded language to indicate that she would carry in contraband for her boyfriend, a prisoner, on her next visit to the prison. When Ezell arrived, as she was waiting in line with her mother and another woman who had come with her, two correctional officers who wore supervisors' uniforms with badges and handcuffs approached and asked "Ma'am, would you come and talk with us?" Ezell came with them. They led her through locked doors into a windowless conference room where they were joined by an additional officer. There the officers confronted Ezell

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

679

with their suspicion that she was carrying contraband based upon the phone conversation and told her police were on the way.

¶ 3. Ezell said she was carrying "two balloons of K2."[2] She also stated that she had brought in contraband on two prior visits. A police officer arrived, and the correctional officers informed him of what Ezell had admitted. The police officer then questioned Ezell himself, without giving her any *Miranda* warnings, and she told him she was carrying two balloons of K2 in her vagina. Ezell was arrested.

¶ 4. Ezell was then transported to a hospital for a body search. The search turned up six balloons rather than the two Ezell had admitted to carrying. The police officer stated to Ezell that there was more contraband than she had admitted to carrying; Ezell then admitted she had been carrying four balloons of marijuana and two of K2. She was charged with possession with intent to deliver THC and delivery of illegal articles to an inmate.

¶ 5. Ezell moved to suppress her statements and all the evidence derived from them on grounds that she

---

[2] A statement given by the attorney general concerning the enactment of Wisconsin's ban on synthetic cannabinoids, 2011 Wis. Act 31, lists "K2" as one of the common names for synthetic cannabinoids. Attorney General J.B. Van Hollen, *New Law Should Stop Sales of Synthetic Drugs in Wisconsin Communities* (June 24, 2011), *available at* http://www.doj.state.wi.us/media-center/2011–ag-columns/new-law-should-stop-sales-synthetic-drugs-wisconsin-communities ("Synthetic cannabinoids are often referred to as synthetic marijuana, K2, Spice, etc."). In Ezell's case, the police officer's affidavit attached to the criminal complaint describes K2 as "a synthetic controlled substance" and states "upon information and belief" that it is "banned" and "considered contraband" at the prison.

was subjected to custodial interrogation without *Miranda* warnings. The state responded that the correctional officers were not state actors required to give *Miranda* warnings, that Ezell was not detained in custody by the correctional officers, and that even if there was a violation of *Miranda*, the request to suppress the physical evidence of the contraband should be denied because the violation was unintentional and suppression would not deter any misconduct. Finally, the State argued that the contraband would inevitably have been discovered regardless of the alleged *Miranda* violation, when the police arrived.

¶ 6. The circuit court concluded that Ezell was not in custody for *Miranda* purposes when questioned at the prison. The court therefore denied the motion to suppress Ezell's statements made at the prison and the evidence recovered from her body after that questioning. On the other hand, the court determined that the police officer's comments at the hospital about the recovery of more contraband than Ezell had admitted carrying were designed to elicit information and thus were custodial interrogation; Ezell's responses to the officer would be suppressed. Ezell pled no contest and now appeals.

## Analysis

¶ 7. Whether evidence should be suppressed due to an alleged violation of *Miranda* is a question of constitutional fact. *State v. Knapp*, 2005 WI 127, ¶ 19, 285 Wis. 2d 86, 700 N.W.2d 899. We uphold the circuit court's factual findings unless the court clearly erred, but we review independently whether the facts satisfied the constitutional standard. *Id.*

681

¶ 8. The Wisconsin and United States Constitutions promise that no person will be compelled to incriminate himself or herself in a criminal case. U.S. CONST. amend. V; WIS. CONST. art. I, § 8. To protect this privilege against self-incrimination, the law forbids police from interrogating suspects held in custody unless the subject of the questioning is first advised of his or her right to remain silent, i.e., given the *Miranda* warnings. *State v. Torkelson*, 2007 WI App 272, ¶ 11, 306 Wis. 2d 673, 743 N.W.2d 511. Statements obtained via custodial interrogation without the *Miranda* warnings are inadmissible against the defendant at trial. *Id.*

¶ 9. As for physical evidence, however, in the absence of "actual coerc[ion]," the United States Constitution does not require suppression of physical evidence obtained as a consequence of unwarned interrogation. *United States v. Patane*, 542 U.S. 630, 643–44 (2004). The Wisconsin Constitution does require suppression of physical evidence obtained "as a direct result of an intentional violation of *Miranda*," but in the absence of coercion or intentional violation of the suspect's rights, there is no basis for suppressing physical evidence. *Knapp*, 285 Wis. 2d 86, ¶ 83.

¶ 10. The first issue in this appeal is whether Ezell was subjected to custodial interrogation when she was questioned by correctional officers in the conference room at the prison. The test for whether a subject is in custody for purposes of triggering *Miranda* warnings is an objective one that asks whether a reasonable person in the subject's position would have considered himself or herself to be in custody. *Torkelson*, 306 Wis. 2d 673, ¶ 13. Custody means a restriction of the

682

subject's freedom similar to the restrictions of formal arrest. *Id.* The court is to consider the totality of the circumstances including the suspect's freedom to leave, the purpose of the questioning, where it takes place, how long it takes, and the "degree of restraint," which includes not only physical restraint such as handcuffing but also whether officers are armed, whether the subject is frisked, and whether officers outnumber the subject. *Id.*, ¶¶ 17–18.

¶ 11. The circuit court concluded that in view of all the circumstances Ezell was not in custody. The State points out on appeal that Ezell voluntarily entered a prison, voluntarily went with the officers when they asked her to come to another room, and "was free to leave the conference room at any time during her interview with the correctional officers" (though she was admittedly not informed of that freedom).

¶ 12. As Ezell points out, however, other aspects of the circumstances would have led a reasonable person in Ezell's position to conclude she was in custody. The correctional officers who approached Ezell and asked her to leave her companions and come with them to talk were wearing uniforms with badges and carrying handcuffs. To reach the conference room, they had to pass through a doorway that was remotely buzzed open for them and closed behind them with an audible click. The officers took Ezell to a windowless room and seated her at a table where one officer began questioning her while two others stood nearby. The officer handling the questioning identified himself and his colleagues by name and rank and told Ezell that she had been overheard discussing her plans to carry in contraband. When Ezell denied carrying contraband,

the officer insisted that he knew Ezell was carrying contraband and that he had contacted local police, who were on their way.

¶ 13. In these circumstances—having been requested by uniformed prison officers with handcuffs to move from a common area through a locked door into an interior, windowless room; being questioned about suspected crimes; and being told police are on the way—a reasonable person would consider herself to be in custody. A government employee who is not a law enforcement officer may still violate *Miranda* by engaging in questioning designed to elicit incriminating information for law enforcement purposes. *See United States v. D.F.*, 115 F.3d 413, 420 & n.9 (7th Cir. 1997).

¶ 14. In addition to the factual circumstances that would have suggested to a reasonable person that he or she was in custody, the department of corrections' (DOC) own administrative rules require warnings to be given before visitors are subjected to inspection or search:

> Before an inspection or search is conducted . . . staff shall inform the visitor orally and in writing, either by a sign posted in a prominent place or on a notice, that the visitor need not permit the inspection or search . . . .

Wis. Admin. Code § DOC 306.18(6) (Aug. 2014). In view of this rule and the rest of the circumstances, we conclude that Ezell was subjected to custodial interrogation when correctional officers interrogated her about her suspected possession of contraband.

¶ 15. However, while Ezell's statements to the correctional officers should have been suppressed, her conviction is still supported by the physical evidence found during the search of her body, which was admis-

sible despite the *Miranda* violation. The United States Supreme Court has explained that the need to protect the Fifth Amendment privilege does not justify suppression of physical evidence derived from unwarned but uncoerced statements, *Patane*, 542 U.S. at 643–44, and Ezell admits that she was not subjected to any coercion. It is true that our state constitution requires exclusion of physical evidence derived from an intentional violation of the *Miranda* rule, *Knapp*, 285 Wis. 2d 86, ¶ 83, even in the absence of coercion, but we find no evidence of intentional violation of Ezell's rights here.

¶ 16. Ezell expresses disbelief that "experienced correctional officers would not know that they were required" to give the warnings, but in fact the officer who testified about the interrogation stated that while he had "heard of" the *Miranda* warnings, "we don't ever use them." Ezell also speculates that the officers had no reason to call police if they were not trying to get Ezell to incriminate herself, but we note that administrative rules require correctional institutions to refer contraband violations to law enforcement. *See* Wis. Admin. Code § DOC 306.18(8) (Aug. 2014). Once the correctional officers learned from the phone conversation that Ezell was planning to carry in contraband, law enforcement was already going to be involved.

¶ 17. On this record, while the correctional officers did make a mistake by not following DOC protocol, it is farfetched to speculate that the correctional officers intentionally violated *Miranda*. As the administrative rules tell us, custodial interrogation of visitors to the prison is not part of a correctional officer's job description. Suppressing the contraband would not deter what amounts to negligent violation of *Miranda*.

¶ 18. We conclude that Ezell was subjected to custodial interrogation in the absence of *Miranda* warnings but that the physical evidence, the contraband, was admissible against her.

*By the Court.*—Judgment affirmed.